UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAMON JACKSON,

Plaintiff,

v.

Case No. 24-11072
Hon. Susan K. DeClerq

MICHIGAN SECRETARY OF STATE JOCELYN BENSON, DETROIT DEPARTMENT OF ELECTIONS, DETROIT CLERK JANICE WINFREY, JANE DOE, JOHN DOE,

Defendants.

---

Ramon Jackson
Plaintiff in pro per
19170 Ohio
Detroit, MI 48221
(313) 423-1076
Advocate0247@gmail.com

James D. Noseda
City of Detroit Law Department
2 Woodward Ave., 5th Floor
Detroit, MI 48226
(313) 237-3057
nosej@detroitmi.gov
Attorney for Detroit Dept. of Elections and Detroit Clerk Janice Winfrey
P52563

---

CITY OF DETROIT DEFENDANTS' MOTION DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) FOR LACK OF JURISDICTION

Defendants, the Detroit Department of Elections, and Detroit Clerk Janice Winfrey, (collectively hereinafter "the City Defendants") move to dismiss plaintiff's first amended complaint under Federal Rule

of Civil Procedure 12(b)(1) for the reasons set forth below and in the attached brief.

Plaintiff alleges that the City Defendants conspired to fraudulently register voters and fraudulently voted on their behalf, which alleged conduct caused plaintiff's vote to become diluted. Out of an alleged 506,000 registered voters in Detroit, Plaintiff identifies perhaps 12 individuals who plaintiff claims do not reside at their registered address or for whom a fraudulent vote was cast in a past election.

The amended complaint (ECF No. 6) seeks monetary damages, declaratory, and injunctive relief for alleged violation of the National Voting Rights Act (NVRA) and National Voting Registration Act, a claim under 42 U.S.C. § 1983 based upon the equal protection clause of the 14th Amendment to the U.S. Constitution, and an alleged conspiracy in violation of 18 U.S.C. § 241.

The first paragraph of the amended alleges that this is a voting rights case under the NVRA (52 U.S.C § 20507, et seq.) and the National Voting Registration Act of 1993. No allegations of fact are made to identify what provision of either law was allegedly violated.

More importantly, plaintiff lacks standing to sue the City Defendants under the NVRA because that statute only allows for suit against a State's chief election official.

As best as can otherwise be discerned from the single Count of the amended complaint (ECF No. 6, PageID# 74-75), plaintiff alleges (i) vote dilution, and (ii) conspiracy to deposit forged ballots in violation of 18 U.S.C. § 241.

Plaintiff lacks standing to assert a claim under 42 U.S.C. § 241 which makes it a criminal offense to conspire to violate a right secured by federal law. It is well established that this law, like other federal criminal laws, does not allow for a civil cause of action.

Plaintiff also fails to allege facts to show he has standing to sue for alleged vote dilution. Vote dilution claims arise in the context of racial gerrymandering or malapportionment where a class of voters are harmed compared to other irrationally favored voters from other districts. Standing to sue for vote dilution allegation of facts to show that the plaintiff was or is individually disadvantaged as a voter in a way different from any other voters. Plaintiff's amended complaint fails to establish standing to pursue a claim of vote dilution because no facts are alleged to

show that any allegedly invalid ballot cast, by or for any of the persons identified in the amended complaint, disadvantaged the plaintiff as an individual voter.

In accordance with Local Rule 7.1(a), on June 26, 2024 the undersigned counsel spoke with plaintiff, explained the nature of this motion and its legal basis, and requested but could not obtain concurrence in the relief sought.

STATEMENT OF ISSUES PRESENTED

1. Does Plaintiff Lack Standing To Pursue A Civil Claim Under 18 U.S.C § 241 Which Is A Criminal Statute Regarding Conspiracies To Violates Rights Protected By Federal Law?

2. Has Plaintiff Failed To Allege Facts To Establish Standing To Sue For Alleged Vote Dilution?

3. Does Plaintiff Lack Standing To Sue The City Defendants Under 52 U.S.C. 20507?

The City Defendants answer YES to all of the above.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Page(s)

Cases

*Am. Civil Rights Union v. Martinez-Rivera*,
166 F. Supp. 3d 779 (W.D. Tex. 2015) .......... 15
*Baker v. Carr*,
369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) .......... 12
*Bellitto v. Snipes*,
221 F. Supp. 3d 1354 (S.D. Fla. 2016) .......... 17
*Beverly v. Beverly*,
No. 17-3919, 2018 WL 1176508 (6th Cir. Jan. 30, 2018) .......... 11
*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006) .......... 13
*Davis v Sarles*,
134 F. Supp. 3d 223 (D.C. Dist. 2015) .......... 11
*Dekoven v. Bell,*
140 F.Supp.2d 748 (E.D.Mich.2001) .......... 10
*Donald Trump for President, Inc. v. Cegavske*,
Case No. 2:20-CV-1445 JCM (VCF), 488 F. Supp. 3d 993, (D. Nev. Sept. 18, 2020) .......... 14
*Erickson v. Pardus*,
551 U.S. 89 (2007) .......... 10
*Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*,
491 F.3d 320 (6th Cir. 2007) .......... 9
*Harnage v. Lightner*,
916 F.3d 138 (2d Cir. 2019) .......... 10
*Hein v. Freedom From Religion Found., Inc.*,
551 U.S. 587, 127 S.Ct. 2553, 168 L.Ed.2d 424 (2007) .......... 13
League *of Women Voters of Michigan v. Johnson*,
352 F. Supp. 3d 777 (E.D. Mich. 2018) .......... 12
*Ledford v. U.S.,*
*155 F.2d 574* (6th Cir. 1946) .......... 10
*Linda R.S. v. Richard D.*,
410 U.S. 614 (1973) .......... 11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ........................ 13
*Martel v. Condos*, Case,
No. 5:20-cv-131, 487 F. Supp. 3d 247, (D. Vt. Sept. 16, 2020) ............ 15
*Martin v. Overton*,
391 F.3d 710 (6th Cir. 2004) ............................................................ 10
*McKay v. Federspiel*,
823 F.3d 862 (6th Cir. 2016) ............................................................ 13
*Moore v. Circosta*,
494 F.Supp.3d 289, (M.D.N.C. Oct. 14, 2020) .................................... 15
*Nikolao v. Lyon*,
875 F.3d 310 (6th Cir. 2017) ............................................................ 13
*Ohio Hosp. Ass'n v. Shalala*,
978 F. Supp. 735 (N.D. Ohio 1997) ..................................................... 9
*Ohio Nat'l Life Ins. Co. v. United States*,
922 F.2d 320 (6th Cir. 1990) .............................................................. 9
*Ohio State Conference of the NAACP v. Husted*,
768 F.3d 524 (6th Cir. 2014) ............................................................ 11
*Paher v. Cegavske*,
457 F. Supp. 3d 919 (D. Nev. 2020) ................................................... 15
*Pritchard v United States*,
181 F.2d 326 (6th Cir. 1950) ............................................................ 11
*Reynolds v. Sims*,
377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) ........................... 12
*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
78 F.3d 1125 (6th Cir. 1996) .............................................................. 9
*Spokeo Inc. v. Robins*,
136 S. Ct. 1540 (2016) ..................................................................... 14
*Thole v. U.S. Bank N.A*,
—— U.S. ——, 140 S.Ct. 1615, 207 L.Ed.2d 85 (2020) ........................ 13
*United States v. Florida*,
No. 4:12cv285-RH/CAS, 2012 WL 13034013 (N.D. Fla. Nov. 6, 2012)
.......................................................................................................... 16
*United States v. Oguaju*,
76 F. App'x 579 (6th Cir. 2003) .......................................................... 11
*Vick v. Core Civic*,
329 F. Supp. 3d 426 (M.D. Tenn. 2018) .............................................. 11

*Warth v. Seldin*,
422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) .......................... 13
*Williams v. Hall*,
No. 21-5540, 2022 WL 2966395 (6th Cir. July 27, 2022) ................... 10

Statutes

18 U.S.C. § 241 ........................................................... 2, 3, 10, 11
28 U.S.C. § 547 ........................................................................ 11
42 U.S.C. § 241 ..................................................................... 2, 11
42 U.S.C. § 1983 ........................................................................ 2
52 U.S.C. § 20501 ....................................................................... 8
52 U.S.C. § 20501 (NVRA) ........................................................ 16
52 U.S.C. § 20510(b) ................................................................. 17
52 U.S.C § 20507 ................................................................ 2, 3, 16, 17

Rules

Fed. R. Crim. P. 7(c) ................................................................. 11
Fed.R.Civ.P.12(b)(1) ............................................................. 1, 8, 9

## FACTS

Plaintiff's First Amended Complaint (ECF No. 6) alleges that he is a registered voter in the City of Detroit. Plaintiff contends that in the 2017, 2020, 2021, 2022, and 2024 elections, defendants (collectively the Michigan Secretary of State, the Detroit City Clerk, and the Detroit Elections Department) conspired to fraudulently register voters and cast votes on their behalf.

The complaint identifies perhaps 12 persons, out of over 500,000 registered voters in Detroit, who plaintiff claims did not reside where they were registered to vote, or that voted when they did not reside in

Detroit. There are no particular allegations of fact that show when or how any defendant fraudulently registered any of these persons or voted on their behalf.

Plaintiff misapprehends or lacks an understanding of the laws governing voter registration and the circumstances the law requires for removing or updating a voter's registration. A combination of state and federal law protects voters from being summarily removed from the voter rolls.

The amended complaint attaches some of the pages from a report prepared by the Detroit Elections Department (ECF No. 6, PageID# 51-55) in response to a pre-suit complaint of voter fraud made by the plaintiff. The report refutes most all of the allegations of improper registration or voting. The complete report is attached as Exhibit 1.

The report was prepared from data in the Qualified Voter File (QVF). The QVF is a statewide database maintained by the Secretary of State's Michigan Bureau of Elections (MBE), that must be used by all election clerks in the State. The MBE's "The Election Officials Manual, Chapter 2: Voter Registration" (Exhibit 2) explains how voters are registered and how a registration can be cancelled. The cancellation

procedures are further explained in the "Voter registration cancellation procedures" issued by the Secretary of State. (Exhibit 3.) As explained in that publication, the cancellation or registrations is done in part by the MBE and in part by local election clerks. Except upon death or a voter request, a cancellation process is initiated by specified events, such as a request by a voter, issuance of driver's license with a changed address, or specified years of inactivity. In many instances, a voter registration can only be cancelled after mailed notice and the lapsing of a period of two federal elections.

The voter registration cancellation process is governed by overlapping federal and state election law. The interplay of these requirements was recently explained in the March 1, 2024 opinion by U.S. District Court Judge Jane M. Beckering (Exhibit 4) that dismissed claims against Secretary Benson under the National Voter Registration Act, 52 U.S.C. § 20501, et seq., based upon an alleged failure to remove deceased voters from the QVF.

Plaintiff's complaint at paragraphs 20 and 21 (ECF No. 6, PageID# 65) alleges a false claim circulating on social media and advanced by the RNC that there are more registered voters than census

numbers would suggest. For example, Michigan's population over the age of 18 is estimated by the census bureau at 7.9 million, whereas there are 8.3 million registered voters statewide. The discrepancy is due to laws and state-imposed procedures which requires clerks to keep inactive voters (those who have not voted for six years or have changed to an out-of-state address), on the rolls for up to two federal election cycles after a notice of cancellation has been mailed. It recently was reported that following such process, 610,000 inactive voters are scheduled for removal from the rolls by 2027.

The City Defendants follow the voter registration and cancellation procedures required by the MBE, and contend that no facts have been presented to support plaintiff's allegations of voter fraud. But even if, for purposes of this motion, the Court accepts as true the allegations made as to perhaps 12 voters out of over 500,000 registered Detroit voters, no facts are alleged to show that plaintiff's vote has been or will be impacted in a manner any different than for all other Detroit or Michigan voters.

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the Court's subject-matter jurisdiction. "Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *See Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325.

A factual attack is a challenge to the factual existence of subject matter jurisdiction. As the Sixth Circuit has explained:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (citation omitted). "In reviewing such a motion, a district

court is to probe the facts and assess the validity of its own jurisdiction. In doing so, the Court has a wide discretion to consider affidavits and the documents outside the complaint, and may even conduct a limited evidentiary hearing if necessary." *Ohio Hosp. Ass'n v. Shalala*, 978 F. Supp. 735, 739 (N.D. Ohio 1997).

Although a pro se litigant's complaint is to be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), that leniency is "not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). The "basic pleading requirements 'apply to self-represented and counseled plaintiffs alike.' " *Williams v. Hall*, No. 21-5540, 2022 WL 2966395, at *2 (6th Cir. July 27, 2022) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)). In other words, pro se complaints "still must plead facts sufficient to show a redressable legal wrong has been committed." Fed.R.Civ.P. 12(b); *Dekoven v. Bell,* 140 F.Supp.2d 748, 755 (E.D.Mich.2001).

## LAW AND ARGUMENT

### I. PLAINTIFF LACKS STANDING TO PURSUE A CIVIL CLAIM UNDER 18 U.S.C. § 241.

Plaintiff alleges that the City Defendants have violated his voting rights by a conspiracy in violation of 18 U.S.C § 241. Section 241 is a

criminal statute that punishes a conspiracy to violate a right secured by federal law. Section 241 has been applied to the right of a voter in a congressional election to have his vote honestly counted. *Ledford v. U.S., 155 F.2d 574* (6th Cir. 1946), certiorari denied 67 S.Ct. 96, 329 U.S. 733, 91 L. Ed. 634 (§ 241 violated by conspiracy of election officials to stuff ballot box).

This is a civil action for which plaintiff seeks damages, declaratory, and injunctive relief, relying upon an alleged violation of 18 U.S.C. § 241. ECF No. 6, PageID # 72-73. In support of Count 1 of the Amended Complaint, paragraph 57 cites *Pritchard v United States*, 187 F.2d at 417, for the proposition that the deposit of forged ballots dilutes the honest votes in an election. There is no such case at the citation provided. Presumably, plaintiff meant to cite *Pritchard v United States*, 181 F.2d 326 (6th Cir. 1950), which affirmed a criminal conviction under 42 U.S.C. § 241 for ballot stuffing.

Only the United States Attorney can initiate criminal charges in federal court. 28 U.S.C. § 547; Fed. R. Crim. P. 7(c). The Plaintiff lacks standing to pursue a claim under 18 U.S.C. § 241 because that statute does not create a private right of action. *Beverly v. Beverly*, No. 17-3919,

2018 WL 1176508, at *1 (6th Cir. Jan. 30, 2018), citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (copy attached as Exhibit 5); see also *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) (upholding dismissal of civil claim pursuant to 18 U.S.C.§ 241 because there is no private right of action under this criminal statute); *Vick v. Core Civic*, 329 F. Supp. 3d 426, 454 (M.D. Tenn. 2018); *Davis v Sarles*, 134 F. Supp. 3d 223 (D.C. Dist. 2015).

## II. PLAINTIFF FAILS TO ALLEGE FACTS TO ESTABLISH STANDING TO PURSUE A CLAIM OF "VOTE DILUTION"

"Vote dilution claims involve challenges to methods of electing representatives—like redistricting or at-large districts—as having the effect of diminishing minorities' voting strength." *Ohio State Conference of the NAACP v. Husted*, 768 F.3d 524, 554 (6th Cir. 2014), vacated on other grounds, 2014 WL 10384647 (6th Cir. 2014). There is no such claim alleged in this case. Rather, plaintiff alleges an injury to himself as an individual from illegal votes allegedly having been being cast in past elections. Plaintiff must allege facts to show he has standing to pursue his vote dilution claim. Plaintiff has not done so.

The Supreme Court has noted that it has "long recognized that a person's right to vote is 'individual and personal in nature. " *Reynolds v.*

*Sims*, 377 U.S. 533, 561, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). But even so, a person must show "disadvantage to themselves as individuals" to establish standing. *Baker v. Carr*, 369 U.S. 186, 206, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Plaintiff in this case lacks standing to pursue a vote dilution claim because there are no allegations that plaintiff has been or will disadvantaged as an individual voter in a manner different from any other voter due to the alleged instances of election fraud.

As explained in L*eague of Women Voters of Michigan v. Johnson*, 352 F. Supp. 3d 777, 792 (E.D. Mich. 2018), *rev'd and remanded*, No. 18-2383, 2018 WL 10096237 (6th Cir. Dec. 20, 2018), " Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,' and 'Article III standing ... enforces the Constitution's case-or-controversy requirement.' " *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597–98, 127 S.Ct. 2553, 168 L.Ed.2d 424 (2007) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006)). "In essence, the standing doctrine prompts courts to inquire 'whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise

of the court's remedial powers on his behalf.' " *McKay v. Federspiel*, 823 F.3d 862, 866–67 (6th Cir. 2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

Plaintiff's standing to pursue a claim of vote dilution must be established as a threshold matter. *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017). "To establish standing ... a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)." *Thole v. U.S. Bank N.A*, ––– U.S. ––––, 140 S.Ct. 1615, 1618–19, 207 L.Ed.2d 85 (2020).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent[.]' " *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Moreover, a concrete injury must actually exist and affect the plaintiff in a personal and individual way.

Federal courts across the country have addressed and rejected the theory that a single voter has standing to sue as a result of his vote being

diluted by the possibility of unlawful or invalid ballots being counted. The district court for the Middle District of North Carolina catalogued a few of those decisions, all finding that the harm was too speculative and generalized—not sufficiently "concrete"—to bestow standing. These courts concluded that the vote dilution argument fell into the "generalized grievance" category. In *Moore v. Circosta*, the court wrote:

> Indeed, lower courts which have addressed standing in vote dilution cases arising out of the possibility of unlawful or invalid ballots being counted, as Plaintiffs have argued here, have said that this harm is unduly speculative and impermissibly generalized because all voters in a state are affected, rather than a small group of voters. *See, e.g., Donald Trump for President, Inc. v. Cegavske*, Case No. 2:20-CV-1445 JCM (VCF), 488 F. Supp. 3d 993, 999–1000, (D. Nev. Sept. 18, 2020) ("As with other generally available grievances about the government, plaintiffs seek relief on behalf of their member voters that no more tangibly benefits them than it does the public at large.") (internal quotations and modifications omitted); *Martel v. Condos*, Case No. 5:20-cv-131, 487 F. Supp. 3d 247, 252–53, (D. Vt. Sept. 16, 2020) ("If every voter suffers the same incremental dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury."); *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926-27 (D. Nev. 2020) ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter."); *Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015) ("[T]he risk of vote dilution [is] speculative and, as such, [is] more akin to a generalized grievance about the government than an injury in fact.")

> Although "[i]t would over-simplify the standing analysis to conclude that no state-wide election law is subject to challenge simply because affects all voters," *Martel*, 487 F. Supp. 3d at 252, the notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury necessary for Article III standing. Compared to a claim of gerrymandering, in which the injury is specific to a group of voters based on their racial identity or the district in which they live, all voters in North Carolina, not just Individual Plaintiffs, would suffer the injury Individual Plaintiffs allege. This court finds this injury to generalized to give rise to a claim of vote dilution ....

*Moore v. Circosta*, 494 F.Supp.3d 289, 312–13, (M.D.N.C. Oct. 14, 2020).

Other courts have similarly found the absence of an injury-in-fact necessary for standing based on claim of vote dilution due to alleged voter fraud. *See, e.g., Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015) ("[T]he risk of vote dilution[ is] speculative and, as such, [is] more akin to a generalized grievance about the government than an injury in fact."); *cf. United States v. Florida*, No. 4:12cv285-RH/CAS, 2012 WL 13034013, at *1 (N.D. Fla. Nov. 6, 2012) (rejecting a motion to intervene under Rule 24 based on the same theory of vote dilution because the "asserted interests are the same ... as for every other registered voter in the state" and therefore constitute "[g]eneralized interests").

In this case, the plaintiff's alleged injury does not differ from that of any other Detroit or Michigan voter. The plaintiff has not alleged that, as a voter, he has suffered a particularized, concrete injury sufficient to confer standing to pursue his vote dilution claim.

## III. PLAINTIFF LACKS STANDING TO SUE THE CITY DEFENDANTS UNDER 52 U.S.C. 20507, ET SEQ.

The amended complaint does not identify any provision of the National Voter Registration Act, 52 U.S.C. § 20501 (NVRA), that was violated by any defendant. Even if facts were alleged to state a claim against the Detroit Defendants under a provision of the NVRA, that law only allows for a civil action against a state's chief election official, which is the Michigan Secretary of State.

As to the Michigan Secretary of State, the City Defendants do not know if plaintiff complied with the pre-suit notice requirement of 52 U.S.C. § 20510(b)(1). If notice was not provided, Plaintiff lacks standing to sue the Michigan Secretary of State. See *Bellitto v. Snipes*, 221 F. Supp. 3d 1354, 1362 (S.D. Fla. 2016) ( plaintiff lacked standing to sue because failure to provide notice under 52 U.S.C. § 20510(b) is fatal to bringing a private action under 52 U.S.C 20507, et seq.).

Plaintiff lacks standing to sue the Detroit Clerk or the Detroit Elections Department because the NVRA does not authorize a civil action against a local election official or office.

## CONCLUSION

For the reasons set forth above, this Court should dismiss the claims alleged against the City Defendants for lack of jurisdiction.

Respectfully submitted,

By: /s/ James D. Noseda
James D. Noseda P52563
City of Detroit Law Department
Attorney for Janice Winfrey and
Detroit Department of Elections
Two Woodward Avenue
Detroit, Michigan 48226
(313) 237-3057 / 5037
nosej@detroitmi.gov

## CERTIFICATE OF SERVICE

I certify that on June 28, 2024, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the parties.

/s/ James D. Noseda